## THE STATE v. MAYOR AND ALDERMEN OF KNOXVILLE et al.

CRIMINAL LAW. *Nuisance.* If, to prevent the spread of an epidemic disease, inconvenience is caused to a few persons by the smoke and noxious vapors arising from the burning of infected clothing, bedding, etc., and if the burning is done by public authority or sanction, in good faith for the public safety, and such means used as are usually resorted to and approved by medical science in such cases, and if done with reasonable care and regard for the safety of others, then it is no indictable nuisance.

### FROM KNOX.

Appeal in error from the Criminal Court of Knox county. M. L. HALL, J.

ATTORNEY-GENERAL LEA and J. C. J. WILLIAMS for the State.

L. A. GRATZ for Knoxville.

FREEMAN, J., delivered the opinion of the court.

It appears from this record that in the latter part of the year 1882, and first of 1883, the small-pox, as an epidemic, prevailed to a considerable extent. The city of Knoxville, as well as the county, thought it their duty, through their authorized agencies, to take active measures to relieve as well as prevent the spread of the disease both in the city and the surrounding country. To this end a small-pox hospital was established at the fair-grounds, about two miles from the city, with suitable buildings for receiving infected patients, and two physicians, Drs. Hudgins and Shaw, employed, the one by the city, the other by the county, to attend patients suffering with the disease. Among the precautionary measures taken to prevent the spread of the plague, the clothing, beds and bedsteads used by persons who had the disease, and either recovered or died, were directed to be burnt, no doubt under the direction of the attending physicians. This, we take it, was done regularly and frequently for some months, as often as occasion required. The fair-grounds property consisted of between sixty and sixty-five acres of land, the building being within this property, and the infected articles burnt on these grounds, probably in pits dug for the purpose. The burning seems to have been some four hundred yards from the nearest houses, but there appears to have been numerous dwellings occupied about that distance, and farther off, but still liable, more or less, to be affected by

the smoke and the scent from the burning clothing, etc. That this at times was more or less offensive is probable, if not certain. For a' nuisance, the result of this burning and the unpleasant effects of the smoke thus generated and disseminated, the defendants are indicted.

The substance of the charge in the indictment is as follows: "That the defendants in April, 1883, near the houses of divers good citizens of the second district of said county, and near two public and common highways, to-wit: the Rutledge pike, and the road running through and by Eastport for all the people to pass, did keep and maintain a certain house and ground known and called a small-pox hospital, where small-pox patients and persons afflicted with the loathsome disease were conveyed and quarantined by said Board of Mayor and Aldermen and J. C. Hudgins, and that they, the defendants, *unlawfully* and injuriously did burn, and caused to be burned, bed-clothes, feathers, bedsteads and clothing, that had been used upon, for and about, and in nursing said small-pox patients, and persons afflicted with small-pox, and being infected with small-pox as aforesaid." It is then averred "that by means aforesaid, that is by such burning, the said defendants did in fact impregnate and poison the atmosphere around and about said public highways and said dwellings and grounds of citizens, whereby noisome, unwholesome smells from said burning aforesaid on divers days did arise so that the air was made corrupt, noisome and unhealthy to the common nuisance of the good citizens residing and passing," etc.

State *v.* Mayor and Aldermen of Knoxville.

We have quoted the language of the indictment, to which the defendants plead not guilty.

The question definitely made by this averment is whether the defendants are guilty of a public nuisance by burning the clothing, beds, etc., of small-pox patients so as to impregnate the air by such burning with smoke, to the annoyance, hurt or inconvenience of the public residing near by or passing the public roads in the manner indicated by the statement of the indictment?

It is not averred that the manner of doing this was improper, that there was any neglect of ordinary or reasonable precautions to protect persons from the effects of the burning clothing, but only that it was "unlawfully and injuriously done," producing the smoke by which the air was unwholesomely impregnated with offensive smells from the burning articles, and this unwholesome infection of the air is averred to have been a common nuisance.

There is no averment of the indictment putting in issue the right of the city or county to establish this hospital, or that the hospital itself was *per se* a nuisance. The establishment of the hospital is only stated by way of historical inducement to the real charge, which is, that by burning the clothing, beds, etc., the air was rendered unwholesome and noxious, and offensive to the citizens inhabiting near the place and the public highways. This is the real question, then, presented by the indictment, whether under the facts and circumstances of the case, under a proper charge of the court, the defendants are guilty of an offense

against the public to be punished by the State in what they are charged to have done.

That the State may well authorize the erection of hospitals, and make such regulations as shall be deemed effective to prevent the spread of an infectious epidemic disease, no one at this day would question. It is among the inherent police powers that belong to all governments. Regulations requiring drainage in cities, the removal of offal and noxious decaying substances in the midst of dense populations, and many other like things, belong to this category. See Cooley Const. Lim., 5th ed., 740–1–2–3.

That it can equally authorize such needful regulations and establishments by towns and cities, is equally clear. In fact it might be fairly inferred, as the incidental powers of a municipal government charged with the protection of life and property of a citizenship by the necessity of the case, closely aggregated within a comparatively small space, 'where infection in case of prevalent · epidemics is liable to spread rapidly and certainly, to establish hospitals, and make such regulations as would tend to · isolate the infected from contact with the general public. The failure to exercise such power would be deemed in this age a mark of a crude and undeveloped civilization. See Wait's Actions and Def., Vol. 4, 764, and authorities cited. Suffice it to say, however, here, that the power to establish the hospital in this case is not a question raised by the indictment directly, but the question is whether the · impregnation of the air by the smoke from the burning clothing under the circumstances is

State *v.* Mayor and Aldermen of Knoxville.

criminal? That smoke or noxious vapors which materially corrupt the air, rendering the occupation of houses near by uncomfortable as habitations is a nuisance, is settled by the uniform current of authorities. That the owner or occupier of houses, whether in the city or country, has the right to enjoy pure and wholesome air, that is, as pure and wholesome as their local situation can reasonably supply, and any act which materially corrupts or pollutes the air, done *without authority or justification* is strictly a nuisance, is well settled by authority. See Wait's Actions and Def., Vol. 4, 748, authorities cited. This is all clear. The jury have found the defendants guilty, and on the facts, that is of the existence of the smoke, and of its rendering the occupation of the houses of persons living hard by uncomfortable, and the air less pure temporarily than otherwise, would have been the case from the nature of their location, there is no ground on which this court could reverse the finding of facts for want of testimony to sustain it.

The question is, whether this finding was under a correct statement of the law by the court below, and whether there was a sufficient *justification* and *authority* for what was done; whether his Honor gave defendants the benefit of the rules of law tending to show such justification and authority for their acts, which are not of themselves denied or seriously controverted?

His Honor, after defining a nuisance with reasonable accuracy, and telling the jury that the burning must have been of such character, and so often, as to create a permanent, frequent and common nuisance, said to

the jury that the question was not as to the authority of the city and county to take precautionary measures to prevent the spread of disease, or to build a hospital for that purpose, nor whether it was properly located, or even whether it was a *suitable* place, *nor whether the burning was* the best means to destroy infected articles of bedding, clothing, etc. He then refers to the grounds of the defense that no nuisance was really committed, and if so, the acts were within the scope and authority conferred on the county and city authorities by law.

In reference to these defenses he tells the jury that if no nuisance was committed, that is, no injury done by the burning to the purity of the air, as a matter of course defendants were not guilty.

As to whether there was any legal authority for doing what was done, that is, the burning the clothing, etc., and consequent creation of the smoke complained of, he says, substantially, that the powers conferred on county court or city authorities to prevent the introduction and spread of diseases must be construed to mean lawful acts, and not the exercise of unlimited and arbitrary powers, and it could not be presumed the Legislature intended to confer such powers, as from mistake, want of proper information or regard to the rights of individuals and the public, with design or otherwise, greater evil may arise than they may be combatting. How an act authorized by the Legislature could *per se* be unlawful we do not see.

He then on this basis told the jury the Legislature could not be construed to have authorized a vio-

State *v.* Mayor and Aldermen of Knoxville.

lation of law, and the powers conferred on the city were to be exercised with due regard to the legal rights of all, and if in the exercise of their powers the city or county should *violate the law,* they would be amenable to the law for its violation.   Just precisely what his Honor intended the jury to understand by these generalities it is not very easy to see thus far.    But the next sentence enables us, perhaps, to gather the application of the remarks quoted.   He summed up the point to the jury in these words: "The question on the indictment is, *nuisance* or no *nuisance,* and if the nuisance be proved, then the next question is, who caused it, or procured it to be done?" He then instructs the jury that in misdemeanors all who participate are principals in the act, and adds, "relatively all citizens of community have rights for the use and enjoyment of the common air in as pure a state as the *ordinary transactions of men* permit."

The theory of all this is, that though the hospital was properly located, and burning the best means to destroy the infected articles of clothing, and the like, under the circumstances, yet if in doing it the air was rendered less pure than by the ordinary transactions of men, the 'defendants were guilty, and should be convicted of the nuisance charged.   This, under his previous definition of a nuisance, as " that which incommodes or annoys, something which produces inconvenience or damage," left the jury nothing to do but find this inconvenience or annoyance, and if so, then a verdict of guilty must follow.

This is made stronger and clearer by his refusal

to charge as requested by defendant's counsel in the first request made, which was substantially that if the burning "of the infected clothing which had been used by persons afflicted with small pox, at or near the hospital grounds, was reasonably necessary to prevent the spread of the disease, and if done in a place reasonably remote from human habitation, then the mere smoke and smell arising from the burning of such clothing, although it may have been a temporary and slight inconvenience to such of the people as may be living in the neighborhood, would not, under these circumstances, be an indictable nuisance. This request is sound law, as we think. Refusing this request, and charging as he did, involved the proposition that means reasonably adopted to prevent the spread of the disease could not be used if it produced temporary inconvenience to persons resident near where the means were thus being used.

In this his Honor clearly erred—all the rules of our law that rest on the idea of restraint or limitation placed upon the rights of the individual, where the interest of the public are to be advanced or protected, are based on the opposite theory from what is thus announced by his Honor.

The general principle resulting from the decided cases is thus given by Judge Cooley, Const. Lim., 5th ed.. 739: "It would," he says, "be quite impossible to enumerate all the instances in which the police power is or may be exercised, because the various cases in which the exercise by one individual of his rights may conflict with a similar exercise by others, or may

be detrimental to the public order or safety, are infinite in number and variety. And there are other cases where it becomes necessary for the public authorities to interfere with the control by individuals of their property, and even destroy it, where the owners themselves have fully observed all their duties to their fellows and to their State, but where, nevertheless, some controlling public necessity demands the interference or destruction. A strong instance of this description is where it becomes necessary to take or destroy the private property of individuals to prevent the spreading of a fire, the ravages of a pestilence, the advance of a hostile army, or any great public calamity. Here the individual is in no default, but his interest must yield to that necessity which knows no law."

The principle thus stated is sound and applicable to the case in hand. The proof very definitely tended to show that burning the articles mentioned was the best means known of preventing the spread of infection, if not the only certain means of doing so, that it was the uniform practice in hospitals where such diseases were being treated and recognized as the accredited mode recommended and endorsed by the best lights of the medical profession.

If this be so, then the simple question is, whether parties using such means so accredited, in good faith, shall be held criminally liable if they should produce temporary inconvenience to other parties near by, for this is the substance of the request refused by his Honor.

The loss to the individuals was only a temporary one by having the air for a time impregnated with smoke, offensive though it was, yet if this was done in order to, and did reasonably tend to, prevent the spread of a loathsome and dangerous disease, by which the lives of from twenty-five to fifty per cent. of persons attacked are liable to die, as one physician swears in this case, then it is too clear to doubt that the interest of the life of many cannot be permitted to be periled that others may enjoy the air untainted by smoke from clothing infected by the disease, being burned at a reasonably safe distance from their dwellings. If you may rightfully destroy the house in which a man dwells in order to prevent the spread of a fire or the ravages of a pestilence, it follows you may much more destroy for a time the salubrity of the air, provided it shall tend reasonably to the result demanded by the public interest.

We do not deem it necessary to enlarge on such a proposition.

The rule applicable to such a case is, that if the act was done by public authority or sanction, and in good faith, and was done for the public safety, and to prevent the spread of the disease, and such means used as are usually resorted to and approved by medical science in such cases, and was done with reasonable care and regard for the safety of others, then the parties were justified in what they did, and the parties inconvenienced could not complain, nor could the State enforce a criminal liability for results of temporary inconvenience or unpleasantness that accrue

from the use of such proper and accredited means for the safety of the community against the spread of disease.

The theory of his Honor is the opposite of this, and is erroneous. Let the judgment be reversed and the case remanded for a new trial.